UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
                                                    )
IN RE:  APPLICATION FOR                             )
ACCESS TO VIDEO EXHIBITS                            )          Miscellaneous No. 21-0075 (PLF)
                                                    )
_____)


MEMORANDUM OPINION AND ORDER

Pending before the Court is petitioner the Press Coalition's Application for

Access to Video Exhibits ("Pet'r's Appl.") [Dkt. No. 1].  The Press Coalition, a group of sixteen

news organizations, seeks an order directing the United States to provide access to eleven video

exhibits that it submitted in support of detaining Nathaniel J. DeGrave pending trial.  Mr.

DeGrave is charged in Criminal No. 21-0090 in relation to the events at the U.S. Capitol on

January 6, 2021.  For the following reasons, the Court will grant the Press Coalition's application

in part and deny it in part.[1]

_____

[1]      The Court has reviewed the following documents in connection with the pending
motion filed in In re:  Application for Access to Video Exhibits, Miscellaneous No. 21-0075:
Application for Access to Video Exhibits ("Pet'r's Appl.") [Dkt. No. 1]; Notice of Supplemental
Authorities ("Pet'r's First Notice Suppl. Auth.") [Dkt. No. 3]; Reply Memorandum in Further
Support of the Application for Access to Video Exhibits ("Pet'r's Reply") [Dkt. No. 4]; Notice
of Supplemental Authorities ("Pet'r's Second Notice Suppl. Auth.") [Dkt. No. 5]; Government's
Response to Petitioners' Notice of Supplemental Authority ("Gov't Second Suppl. Resp.") [Dkt
No. 7]; and Press Coalition's Reply in Further Support of its Notice of Supplemental Authorities
("Pet'r's Second Reply") [Dkt. No. 8].

The Court has also reviewed the following documents in connection with the pending
motion filed in United States v. Nathaniel DeGrave, Criminal No. 21-0090:  March 25, 2021
Order ("Order Granting Mot. Seal") [Dkt. No. 18]; June 15, 2021 Minute Order ("June 15, 2021
Minute Order"); Notice Regarding Sealed Video Exhibits ("Def. Notice") [Dkt. No. 48];
Response to Minute Order Regarding Application for Access to Certain Sealed Video Exhibits
("Gov't Resp.") [Dkt. No. 49]; Response to Minute Order Regarding Application for Access to
Certain Sealed Video Exhibits ("Gov't First Suppl. Resp.") [Dkt. No. 51]; and Government
Exhibit 1 – Declaration of Thomas DiBiase ("DiBiase Decl.") [Dkt. No. 51-1].

## I.  BACKGROUND

This application concerns eleven videos, eight of which are not sealed and three of which are sealed.  See Pet'r's Appl. at 2; Gov't Resp. at 2.  The three sealed videos contain footage from the U.S. Capitol surveillance system.  See Order Granting Mot. Seal.  The Press Coalition contends that it is entitled to access all eleven videos under the First Amendment and the common law.  Pet'r's Appl. at 1.  The Press Coalition also seeks permission to "record, copy, download, retransmit, and otherwise further publish" all eleven videos.  Pet'r's Appl. at 3.

The Court directed the United States and Mr. DeGrave to file responses to the Press Coalition's application.  June 15, 2021 Minute Order.  Mr. DeGrave takes no position on the application.  Def. Notice at 1.  The United States does not oppose releasing the eight unsealed videos, which it identifies as Videos 1 through 8, and does not oppose authorizing the Press Coalition to record, copy, download, retransmit, or further broadcast those eight videos.  Gov't Resp. at 2.

The United States initially objected to releasing all three sealed videos, which it identifies as Videos 9 through 11.  Gov't Resp. at 2-3, 5; see also Gov't First Suppl. Resp. at 1-7. The Press Coalition urged the Court to release the three sealed videos over the United States' objections, arguing that certain Capitol surveillance footage, including one of the sealed videos at issue here, was already in the public domain, and that the United States had consented to release of similar footage in other proceedings.  Pet'r's Reply at 1, 3-6; Pet'r's Second Notice Suppl. Auth. at 1-2.  The United States subsequently acknowledged that the footage in Video 9 had already been released.  Gov't Second Suppl. Resp. at 1.  The United States accordingly revised its position; it now does not oppose release of Video 9 but continues to oppose release of Videos 10 and 11.  Id.

## II.  DISCUSSION

### A.  *Unsealed Videos*

No party opposes release of the eight unsealed videos and the Court is not aware of any reason to deny public access to them.  The Court therefore will direct the United States to promptly make the eight unsealed videos available to the Press Coalition pursuant to the procedures described by Chief Judge Howell in Standing Order No. 21-28, In re: Media Access to Video Exhibits in Pretrial Hearings During the Covid-19 Pandemic (May 14, 2021).  In addition, because neither Mr. DeGrave nor the United States asks the Court to restrict the Press Coalition's use of the eight unsealed videos, and because the Court is not aware of any reason to impose such restrictions, the Court will authorize the Press Coalition to record, copy, download, retransmit, or further broadcast the eight unsealed video exhibits.

### B.  *Sealed Videos*

The Court will direct the release of one of the sealed videos, Video 9, and will authorize the Press Coalition to record, copy, download, retransmit, or further broadcast Video 9.  Although the Court previously concluded that Video 9 should be sealed, see Order Granting Mot. Seal, the Court now understands that the footage in Video 9 has been released publicly, see Pet'r's Second Notice Suppl. Auth. at 1-2; Gov't Second Suppl. Resp. at 1.  Because the public already has access to the footage in Video 9, the concerns that the United States had raised about the harm that could result from releasing Video 9 no longer apply.  In addition, the United States no longer objects to releasing Video 9.  See Gov't Second Suppl. Resp. at 1.

Videos 10 and 11 are different because they have not yet been publicly released and they contain sensitive information about the U.S. Capitol surveillance system.  Although the First Amendment right of access gives rise to a "presumption of openness" in criminal

proceedings, Wash. Post v. Robinson, 935 F.2d 282, 288 (D.C. Cir. 1991) (quoting

Press-Enterprise Co. v. Superior Ct. of Cal., Riverside Cnty., 464 U.S. 501, 510 (1984)), and

there is a "strong presumption in favor of public access" to judicial records under the common

law, In re Leopold to Unseal Certain Elec. Surveillance Applications and Ords. ("In re

Leopold"), 964 F.3d 1121, 1127-28 (D.C. Cir. 2020), neither presumption is absolute.  Here, the

risks that the United States identifies in its briefs overcome the presumptions of access under

both the First Amendment and the common law.

### 1.  First Amendment

The presumption in favor of public access under the First Amendment is

overcome where "(1) closure serves a compelling interest; (2) there is a substantial probability

that, in the absence of closure, this compelling interest would be harmed; and (3) there are no

alternatives to closure that would adequately protect the compelling interest."  Wash. Post v.

Robinson, 935 F.2d at 290 (citations and quotation marks omitted).  All three elements are

satisfied here.

First, sealing the videos serves the compelling interest of protecting details related

to the Capitol building's layout and security.  The Court has already found that "there are

reasonable grounds to believe that the disclosure of [these videos] could jeopardize national

security," and that "the United States has established a compelling governmental interest to

justify the requested sealing."  Order Granting Mot. Seal at 1.  As Thomas A. DiBiase, General

Counsel for the U.S. Capitol Police ("USCP"), stated in a declaration, public disclosure of

Capitol surveillance footage could "result in the layout, vulnerabilities, and security weaknesses

of the U.S. Capitol being collected, exposed, and passed on to those who might wish to attack the

Capitol again."  DiBiase Decl. ¶ 14.  Because the USCP's closed-circuit video system "provides

the backbone of the security for the U.S. Capitol Grounds," id. ¶ 2, the United States has a compelling interest in protecting this information.

       The Press Coalition responds by emphasizing that the United States "has chosen not to contest the release of Capitol surveillance footage" in certain other proceedings.  Pet'r's Reply at 1; see also Pet'r's Second Notice Suppl. Auth. at 2-3.  Yet the fact that United States may have taken another position in relation to different video footage in other proceedings does not prevent the Court from concluding that the United States has a compelling interest in protecting the videos at issue here.  A number of the now-released videos identified by the Press Coalition were captured by cameras in different parts of the Capitol, including outside of the Capitol building, where the security concerns are different.  See Gov't Second Suppl. Resp. at 1. The United States represents that the footage in Videos 10 and 11 has not yet been disclosed, see Gov't First Suppl. Resp. at 5; Gov't Second Suppl. Resp. at 1, and the Court concludes that the United States maintains an interest in protecting the information contained in that footage.

       Second, the Court agrees with the United States that "disclosing this sensitive infrastructure to the public, including hundreds of individuals who have already shown a willingness to storm the Capitol . . . would be detrimental to [its] interests" in protecting the Capitol building's layout and security.  Gov't First Suppl. Resp. at 3.  Such disclosure would reveal information that could be used by anyone who might wish to attack the Capitol in the future.  The Press Coalition suggests that the fact that certain Capitol surveillance footage has already been released neutralizes this risk because "Capitol CCTV videos are now in [] extensive circulation."  Pet'r's Second Reply at 1; see also Pet'r's Reply at 4.  Even so, releasing additional footage amplifies the security concern because "large sections of footage," in aggregate, may provide "a clear picture of the interior of the Capitol, including entry and exit points, office

locations, and the relation of the crucial chambers and offices . . . to other areas of the Capitol."
DiBiase Decl. ¶ 16.  In addition, releasing Videos 10 and 11 risks disclosing information about
specific surveillance camera placement and functionality.  <u>See</u> Gov't First Suppl. Resp. at 3.
Because the Press Coalition has not established that any of the footage already released was
captured by the same cameras as Videos 10 and 11, this risk remains even though other Capitol
surveillance footage is publicly available.

Third, there is no alternative to closure that would adequately protect the United
States' interest in preserving the security of the Capitol building and grounds because the videos
themselves inherently reveal the details it wishes to protect, such as the positions of surveillance
cameras "and whether [a camera] pans, tilts, or zooms."  Gov't First Suppl. Resp. at 3.  The
Court therefore concludes that sealing Videos 10 and 11 "is essential to preserve higher values
and is narrowly tailored to serve that interest."  <u>Press-Enterprise Co. v. Superior Ct. of Cal.
Riverside Cnty.</u>, 464 U.S. at 510.

## 2.  Common Law

Because of the clear national security risk articulated by the United States, the
Court also denies the Press Coalition's claim for access to Videos 10 and 11 under the common
law.  "The law of this circuit is that the need to 'guard against risks to national security interests'
overcomes the common-law claim for access.'"  <u>Dhiab v. Trump</u>, 852 F.3d 1087, 1098 (D.C.
Cir. 2017) (quoting <u>United States v. Hubbard</u>, 650 F.2d 293, 315-16 (D.C. Cir. 1980)).

Within this circuit, the six-factor analysis established in <u>United States v. Hubbard</u>,
"'has consistently served as [the] lodestar' for evaluating motions to seal or unseal judicial
records 'because it ensures that [courts] fully account for the various public and private interests
at stake.'"  <u>In re Leopold</u>, 964 F.3d at 1127 (quoting <u>MetLife, Inc. v. Fin. Stability Oversight</u>

Council, 865 F.3d 661, 666 (D.C. Cir. 2017)).  Under the Hubbard test, district courts weigh the following six factors:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

In re Leopold, 964 F.3d at 1131 (quoting MetLife, Inc. v. Fin. Stability Oversight Council, 865 F.3d at 665); see also See United States v. Hubbard, 650 F.2d at 317-22.  An analysis of these six factors makes clear that Videos 10 and 11 should remain under seal.

First, there is not a strong need for public access to Videos 10 and 11.  The public already has access to numerous videos depicting the events of January 6, 2021, including the nine that will be released in connection with this application, and the Press Coalition has made no claims about the public's need to access the specific content of Videos 10 and 11.  Second, the public has not previously had access to Videos 10 and 11.  Gov't First Suppl. Resp. at 5; Gov't Second Suppl. Resp. at 1.  In fact, access to Capitol surveillance footage is in general severely restricted, including in criminal proceedings where a defendant's interest in any potentially exculpatory footage is far greater than the Press Coalition's interest here.  See DiBiase Decl. ¶¶ 3-7.  Third, the USCP, through the United States, strongly objects to releasing the videos.  Gov't First Suppl. Resp. at 6; DiBiase Decl. ¶ 14; Gov't Second Suppl. Resp. at 1-2.  Fourth, the USCP maintains powerful property and privacy interests in sealing the videos, which it provided to investigators on the understanding that the footage would "remain in the legal control of the USCP."  DiBiase Decl. ¶ 12.  Fifth, disclosing the videos could prejudice the USCP in its efforts to secure the Capitol building against future threats, as discussed above.

Only the sixth <u>Hubbard</u> factor weighs in favor of release, as the videos were submitted to influence the Court's decision on pretrial detention.  This single factor, however, does not overcome the weight of the five other factors in favor of maintaining the seal.  The Court therefore concludes that "justice [] requires" that Videos 10 and 11 remain under seal.  <u>In re Leopold</u>, 964 F.3d at 1131.

### III.  CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that the Press Coalition's Application for Access to Video Exhibits [Dkt. No. 1] is GRANTED with respect to the eight unsealed videos identified by the United States as Videos 1 through 8 and the one sealed video identified as Video 9; it is

FURTHER ORDERED that the United States is directed to promptly make Videos 1 through 9 submitted in connection with Mr. DeGrave's motion for pretrial release publicly available without restrictions by providing access using the "drop box" technical solution described by Chief Judge Howell in Standing Order No. 21-28, <u>In re: Media Access to Video Exhibits in Pretrial Hearings During the Covid-19 Pandemic</u> (May 14, 2021); it is

FURTHER ORDERED that the Press Coalition is authorized to record, copy, download, retransmit or further broadcast Videos 1 through 9; and it is

FURTHER ORDERED that the Press Coalition's Application for Access to Video

Exhibits [Dkt. No. 1] is DENIED with respect to the two sealed videos identified by the United

States as Videos 10 and 11.

SO ORDERED.


_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   August 13, 2021